UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| LILIA GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-22148-MGC |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### UNITED STATES OF AMERICA'S ANSWER AND COUNTERCLAIM

The United States of America answers Plaintiff's complaint as follows:

COMPLAINT ¶1: Plaintiff, Lilia Gomez, is a citizen of the State of Florida.

**ANSWER ¶1:**  Admitted.

COMPLAINT ¶2:  The Defendant is the United States of America.

**ANSWER ¶2:** Admitted.

COMPLAINT ¶3: This is a civil action brought by Plaintiff for refund of a portion of penalties assessed against Plaintiff pursuant to the provisions of 26 U.S.C. §§ 6701.  Pursuant to the provisions of 26 U.S.C. §6703, Plaintiff paid an amount equal to fifteen percent (15%) of the penalties assessed pursuant to 28 U.S.C. §6701 (the "6703 Penalty Payment").  In this action Plaintiff is requesting a refund of the 6703 Penalty Payment and abatement of the remaining penalties.

**ANSWER ¶3:**  Admitted, except the United States denies that Plaintiff is entitled to a refund and/or abatement of the §6701 penalties at issue.

COMPLAINT ¶4: This action arises under the provisions of 26 U.S.C. §7422 and this Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

    **ANSWER ¶4:**  Admitted.

COMPLAINT ¶5: Venue is proper pursuant to 28 U.S.C. §1391 and is properly lodged in the U.S. District Court for the District of Florida, Southern Division.

    **ANSWER ¶5:** Admitted.

COMPLAINT ¶6: Jury trial in this action against the United States of America is proper under the provisions of 28 U.S.C. §2402.

    **ANSWER ¶6:**  Admitted.

COMPLAINT ¶7: Plaintiff has met all requirements for jurisdiction under 28 U.S.C. §1346(a)(1) and 26 U.S.C. §6703.  Specifically, Plaintiff was assessed return preparer civil penalties by the Internal Revenue Services (the "I.R.S.") for alleged actions relating the preparation of income tax returns for the calendar years 2000, 2001, 2002, 2003 and 2004 under 26 U.S.C. §§6701.

    **ANSWER ¶7:**  Admitted.

COMPLAINT ¶8: On or about May 25, 2007, Defendant, Department of the Treasury, Internal Revenue Service, issued its Notice of Assessment against Taxpayer Identification No. [Redacted Pursuant to Fed. R. Civ. Pro. 5.2] directed to "Lilia Gomez", making an assessment under §6701 in the amount of $1,192,000.. [sic] A copy of the Notice of Assessment is attached and incorporated by Reference as Exhibit "A".

    **ANSWER ¶8:**  Admitted.

COMPLAINT ¶9: Pursuant to the provisions of 26 U.S.C. §6703, on June 25, 2007 Plaintiff paid to Defendant the 6703 Penalty Payment, constituting an amount equal to fifteen percent (15%) of

the penalties assessed pursuant to 26 U.S.C. §6701 and filed refund claims for each of the

assessed penalties on IRS Form 843.

**ANSWER ¶9:** Admitted.

COMPLAINT ¶10: Attached hereto as Exhibit "B" is a copy of the personal check from Plaintiff

(the "6703 Penalty Payment Check") in payment of the 6703 Penalty Payment, constituting an

amount equal to fifteen percent (15%) of the penalties assessed pursuant to 26 U.S.C. §6701,

which check was hand delivered to Miami Dade, Florida office of the IRS on June 25, 2007.

**ANSWER ¶10:** Admitted.

COMPLAINT ¶11: Attached hereto as Exhibit "C" are copies of the Claims for Refund and

Request for Abatement filed on Form 843 for each of the assessed penalties for each of the

periods at issue (the "Refund Claims"), which Refund Claims were hand delivered to the Miami

Date County, Florida office of the IRS on June 25, 2007.

**ANSWER ¶11:** Admitted, but the United States denies all allegations in Plaintiff's

claims for refund that are not expressly admitted herein.

COMPLAINT ¶12: Thereafter, on September 20, 2007, a Notice of Intent to Levy bearing that

same date, was received by Plaintiff.  A copy of the said Notice is attached and incorporated by

reference as Exhibit "D".

**ANSWER ¶12:** Admitted.

COMPLAINT ¶13: On September 26, 2007, Plaintiff corresponded with the Defendant,

Department of Treasury Internal Revenue Service, concerning the Notice of Intent to Levy dated

September 20 20 [sic], 2007, [sic] A copy of the September 26, 2009, letter to said Defendant is

attached and incorporated by reference as Exhibit "E" Therein, said Plaintiff notes that the

Notice of Intent to Levy was issued in violation of the stay created by filing Form 843 and the making of the aforementioned deposit pursuant to the provisions of 26 USC § 6703 [sic]

**ANSWER ¶13:** Admitted, but the United States denies all allegations in Exhibit E that are not expressly admitted herein.

COMPLAINT ¶14: Following two conferences, in December 2008 and May 2009, with IRS Appeals Agent, Timothy Vaughns, in Miami-Dade County, on or about June 16, 2009, the IRS Appeals Office issued by certified mail a notice of disallowance.  However, to date, Plaintiff has not received a copy of the notice.

**ANSWER ¶14:** Admitted, except the United States lacks knowledge or information sufficient to form a belief about the truth of the allegation that "to date, Plaintiff, has not received a copy of the notice."

COMPLAINT ¶15: Further, Plaintiff's representative and undersigned counsel did not come into receipt of the notice of disallowance until July 2, 2009 *See* Exhibit "F".  Plaintiff's representative and undersigned was patiently awaiting the final bill for the assessed penalties and interest indicated in Mr. Vaughns [sic] correspondence dated June 3, 2009.  See Exhibit "G".  Upon contacting Mr. Vaughns in June 2009, Plaintiff's representative requested a copy of the final bill, to which Mr Vaughns stated was sent from IRS Appeals Office in Plantation, Florida.  This action, therefore, is timely filed.

**ANSWER ¶15:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations that Plaintiff's representative and undersigned counsel did not receive the notice of disallowance until July 2, 2009, and the Plaintiff's representative and undersigned counsel patiently awaited the final bill for assessed

penalties and interest indicated in Mr. Vaughns correspondence dated July 3, 2009.  The United States admits that Plaintiff's representative requested a copy of the final bill, that Mr. Vaughns stated that the final bill was sent for the IRS' office in Plantation, Florida, and that this action is timely filed.  The United States denies any other allegations in this paragraph.

COMPLAINT ¶16: At issue in this Complaint are various return preparer penalties against Plaintiff.  Specifically those penalties are:

(a) An "aiding and abetting penalty" under 26 U.S.C. §6701, relating to the preparation of a Form 1040X amended income tax returns for individual tax payers [sic] for calendar year 2000.

(b) An "aiding and abetting penalty" under 26 U.S.C. §6701, relating to the preparation of a Form 1040X amended income tax returns for individual tax payers [sic] for calendar year 2001.

(c) An "aiding and abetting penalty" under 26 U.S.C. §6701, relating to the preparation of a Form 1040X amended income tax returns for individual tax payers [sic] for calendar year 2002.

(d) An "aiding and abetting penalty" under 26 U.S.C. §6701, relating to the preparation of a Form 1040X amended income tax returns for individual tax payers [sic] for calendar year 2003.

(e) An "aiding and abetting penalty" under 26 U.S.C. §6701, relating to the preparation of a Form 1040X amended income tax returns for individual tax payers [sic] for calendar year 2004.

**ANSWER ¶16:** Admitted.

COMPLAINT ¶17: By way of over a thousand (1,000) correspondence audits, Internal Revenue

Service agent, Joann Leavitt, made the erroneous determination that Plaintiff, who aided or

assisted in the preparation of false original and amended tax returns in which education credits

were claimed, was liable for proposed penalties in the amount of $1,192,000.

> **ANSWER ¶17:** The United States admits that, based on over 1000 correspondence
>
> audits, IRS agent Joann Leavitt determined that Plaintiff aided or assisted in the
>
> preparation of false original and amended tax returns that claimed education credits and
>
> that Plaintiff is liable for $1,192,000 in penalties.  The United States denies that IRS
>
> agent Leavitt's determinations are erroneous.

COMPLAINT ¶18: The penalties assessed under 26 U.S.C. §6701 for each of the returns and

periods listed were assessed based upon the erroneous allegation by the representative of

Defendant that, in the preparation of each of the applicable returns Plaintiff was a person, under

26 U.S.C §6701:

> (1) who aids or assists in, procures, or advises with respect to, the preparation or
>
> presentation of any portion of a return, affidavit, claim or other document,
>
> (2) who knows (or has reason to believe) that such portion will be used in connection
>
> with any material matter arising under the internal revenue laws, and
>
> (3) who knows that such portion (if so used) would result in an understatement of the
>
> liability for tax of another person.

> **ANSWER ¶18:** The United States admits that the penalties were assessed pursuant to 26

U.S.C. § 6701 and that IRS agent Joann Leavitt determined that Plaintiff's actions met all the

statutorily required elements for assessing the penalties.  The United States denies that IRS agent

Leavitt's determinations were erroneous.

COMPLAINT ¶19: Each of the return preparer penalties assessed against Plaintiff was assessed

in error.  There are no facts in the record as prepared and alleged by the examining Revenue

Agent which would support assessment of the penalties under the grounds set forth in the

applicable statutory authority of 26 U.S.C. §§6701, and the Regulations promulgated thereunder.


     **ANSWER ¶19:** Denied.

COMPLAINT ¶20: The assessment is without any foundation whatsoever and is a naked

assessment in that the assessment is based solely on unfounded conclusions and false assertions

in the agent's report that accompanies the Pre-Assessment Letter, Exhibit "A".

     **ANSWER ¶20:** Denied.

COMPLAINT ¶21: By virtue of the foregoing, Plaintiff is entitled to an order of this court and

judgment on this claim for relief, and a determination that there is no liability on the part of

Plaintiff for the said penalty and that the penalty is invalid, erroneous, unauthorized, unlawful

and/or void.  Pursuant to the provisions of 26 U.S.C. § 6703, Plaintiff is entitled to a refund of all

sums paid by Plaintiff to Defendant, Department of the Treasury, Internal Revenue Service,

namely, the sum of $6,000 together with interest thereon as provided by statute and an order of

this court abating, in full, the aforementioned penalty or assessment.

     **ANSWER ¶21:** Denied.

COMPLAINT ¶22: Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21, as

set forth above.

**ANSWER ¶22:** The United States repeats its respective responses for ¶¶1-21.

COMPLAINT ¶23: The Court should hold that all penalties assessed against Plaintiff, a set forth in paragraph 17, were erroneously assessed and should be abated.

**ANSWER ¶23:** Denied.

COMPLAINT ¶24: Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 21, as set forth above.

**ANSWER ¶24:** The United States repeats its respective responses for ¶¶1-21.

COMPLAINT ¶25: The Court should hold that Plaintiff is entitled to a refund of the full amount of the 6703 Penalty Payment made by him [sic] equal to the amount of fifteen (15%) of the penalties assessed pursuant to 26 U.S.C. §6701, in the amount of $6,000, together with applicable interest thereon.

**ANSWER ¶25:** Denied.

COMPLAINT ¶26: Plaintiff refers to and incorporates by reference each and every allegation made and contained in paragraphs 1 through 21, as through fully set forth at this point

**ANSWER ¶26:** The United States repeats its respective responses for ¶¶1-21.

COMPLAINT ¶27: As a result of the unauthorized, erroneous and unlawful nature of the aforementioned assessment, all as more fully set out in paragraph 18, above, the Defendant cannot under any circumstances prevail on any claimed right to collect this or any other penalty assessment against Plaintiff and the assessment is, as a result, a naked assessment without any foundation whatsoever.

**ANSWER ¶27:** Denied.

COMPLAINT ¶28: An actual controversy has arisen and now exists between Plaintiff and Defendant, concerning their respective rights and duties with respect to the aforementioned Notice of Assessment and Notice of Intent to Levy, Exhibits "" [sic] and "E", in that Plaintiff contends the said Notice of Assessment and Notice of Intent to levy are unauthorized, unlawful, erroneous and void for the reasons alleged above.  Plaintiff is informed and believes, and thereon alleges, that Defendant disputes this contention [sic]

**ANSWER ¶28:** Admitted.

COMPLAINT ¶29: Plaintiff has no adequate remedy at law in that Defendant has disregarded the stay created by the filing of a Form 843 and the deposit made by Plaintiff on June 25, 2007, and continues to threaten enforcement of the aforementioned invalid and void assessment. Plaintiff is informed and believes, and thereon alleges, that unless this court enjoins and restrains Defendant from further attempts at enforcement of the aforementioned assessment, Defendant will continue in its attempts to enforce the said assessment, in violation of 26 USC § 6703(c) and in derogation of Plaintiffs' [sic] rights to due process of law under the United States constitution, Amendment No., [sic] 5 Unless Defendant is permanently enjoined and restrained from engaging in any such conduct or from attempting to make further or different assessments against Plaintiff, Plaintiff will suffer great and irreparable injury in that said Defendant will continue in its unlawful and unauthorized making of assessments and in attempts to enforce those assessments, all without according to the assessed person right to notice and hearing as mandated by statute and by Amendment No. 5 to the United States Constitution.

**ANSWER ¶29:** The United States admits that pursuant to the  provisions of 26 U.S.C. § 6703, the Notice of Intent to Levy should not have been sent to Plaintiff.  The IRS has

since implemented hold codes on Plaintiff's account that will prevent any further

prohibited collection activity until the resolution of this case.  Therefore, there are no

current efforts by the United States to collect on this assessment, and the United States

denies that it continues to threaten enforcement of the assessment and denies that it will

continue to do so unless enjoined by this Court.  However, the provisions of 26 U.S.C. §

6703 do not prohibit the United States from making further or different assessments

against Plaintiff, and 26 U.S.C. § 7421(a), also called the Anti-Injunction Act, expressly

prohibits Plaintiff from seeking an injunction barring the United States from making any

future assessments.  The United States denies all other allegations in this paragraph.

COMPLAINT ¶30: Plaintiff desires a judicial determination and declaration of its rights and

duties and a declaration as to whether the assessment is invalid, erroneous, unlawful,

unauthorized and void.

**ANSWER ¶30:** Admitted, but the United States denies the assessment at issue is invalid,

erroneous, unlawful or void.


WHEREFORE, the United States requests that this Court deny Gomez her requested

relief, determine that Gomez take nothing on her complaint and further grant the United States

such relief as justice might require.


**COUNTERCLAIM – Judgment for Penalties Pursuant to 26 U.S.C. § 6701**

The United States brings this counterclaim against Plaintiff Lilia Gomez and for its

counterclaim alleges:

1.      The United States brings this counterclaim, pursuant to 26 U.S.C. §§ 7402 and 6703(c), for a judgment against Gomez for monetary penalties previously assessed against her pursuant to 26 U.S.C. § 6701.

2.      The penalties for which the United States seeks a judgment in this counterclaim are the same penalties for which Gomez seeks a refund in her complaint.

3.      This action has been authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of the Attorney General of the United States, pursuant to 26 U.S.C. § 7401.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1396.

6.      Gomez previously owned and operated 1 Tax Prep, Inc., a tax return preparation business, located in Hialeah, Florida.

7.      On March 27, 2008, the United States District Court for the Southern District of Florida entered a Final Judgment of Permanent Injunction against Gomez and 1 Tax Prep, Inc. in United States v. Lilia A. Gomez et al., Case No. 06-CIV-22962-PAS.  Gomez consented to the permanent injunction, which among other restrictions, prohibited her from preparing or assisting in the preparation of tax returns.

8.      Prior to being permanently enjoined for preparing tax returns, Gomez had been preparing tax returns for clients for approximately 20 years.  In 2001-2005, Gomez and her company, 1 Tax Prep. Inc., prepared approximately 1,800 to 4,500 tax returns a year for their

clients.  Most of these tax returns were individual income tax returns, although Gomez and her

business also prepared a few corporate tax returns each year.

**A.      The 1284 Amended Tax Returns**

9.      During a four-month span between November 2003 and February 2004, Gomez

prepared and filed approximately 1284 amended income tax returns claiming education tax

credit refunds on behalf of her clients.  The 1284 amended tax returns all sought to amend tax

returns that were originally filed for the 2000-2003 tax years.

10.       Amended tax returns, such as the ones at issue in this case, are filed using a

Form 1040X.

11.      There are two types of education credits – the Lifetime Learning Credit and the

Hope Credit.  Each of the 1284 returns referenced in ¶9 claimed at least one of these two credits,

and a small number of the amended tax returns claimed both credits.

12.      The Hope Credit applies for the first two years of post-secondary education, such

as college or a vocational school.  It is a direct tax credit against qualified tuition and related fees

that are paid during the tax year.  A student claiming the credit must be enrolled at least half-

time for at least one academic period that began during the tax year.

13.      The Lifetime Learning Credit applies to undergraduate, graduate and professional

degrees courses, and unlike the Hope Credit it applies regardless of the number of years a

student has spent in the program.  The Lifetime Learning Credit is a tax credit for a percentage

of a student's post-secondary tuition and fees up to a maximum amount each year.

14.      Each credit may be claimed by the parent or the student, but not both.  Also, one

cannot claim both credits for the same student in the same year.  Both credits are phased out

above predetermined Modified Adjusted Gross Income levels.  Other limitations also apply to both credits.

15.     The 1284 amended tax returns prepared by Gomez were all audited by the Internal Revenue Service's Correspondence Unit.  An audit conducted by the Correspondence Unit is, as the name implies, conducted by correspondence rather than face-to-face with a revenue agent or tax compliance officer.  During a correspondence audit, the IRS audits a particular issue on the tax return.  In the case of the 1284 amended tax returns, the correspondence audit examined the taxpayers' eligibility for the claimed Lifetime Learning Credits or Hope Credits.  The audits did not look at any other issues on the amended tax returns or the original returns.

16.     During the correspondence audits the taxpayers were given the opportunity to provide documentation (e.g., Forms 1098-T (Tuition Payment Statements), copies of cancelled checks showing tuition or fee payments, copies of receipts for tuition or fees, etc...) that would show the taxpayers' eligibility for the two credits.  If the taxpayers proved their eligibility for the credits, the IRS accepted the amended tax returns and processed their refunds.  If the taxpayers were unable to prove their eligibility for the credits, the IRS did not issue them refunds.

17.     As a result of the correspondence audits, approximately 97% of the total education tax credit refunds requested on the amended tax returns were disallowed in full.

18.     Had these amended tax returns been accepted by the Internal Revenue Service without audit, the loss to the United States would have been approximately $1.25 million.

19.     Most of the education tax credits claimed on the 1284 audited returns were disallowed for lack of substantiation.  If the amended tax returns were legitimate, it would have

been relatively easy for Gomez's clients to provide supporting documentation to verify their eligibility for the tax credits.  In most cases the taxpayers could have verified their eligibility by providing proof they paid the qualifying tuition and/or education-related fees.

20.     Given that the taxpayers are seeking refunds ranging from a few hundred dollars to a few thousand dollars, and given that they paid Gomez to prepare and file these amended tax returns, it is reasonable to expect that if the claims for these education tax credits were legitimate the taxpayers would want to verify their eligibility for the tax credits during the correspondence audits and obtain the tax credit rather than fail to provide this information and abandon their request for a refund.  Therefore, the extremely high rejection rate of the amended tax returns indicates that they were fraudulent.

21.     The circumstances under which the amended tax returns were filed support the conclusion that they are part of a fraudulent scheme perpetrated by Gomez.

22.      Gomez's clients are predominantly low-income residents of Hialeah, Florida and the greater Miami area.

23.     Many of Gomez's clients cannot speak English.  Many of her clients also cannot read or write English.

24.     This is illustrated by the fact that Gomez transacts business with many of her clients in Spanish rather than English.  It is also evidenced by the fact that Gomez uses two versions of questionnaires and other forms with her clients.  One version is in English, and one version is in Spanish.  As a result, many of the forms filled out by Gomez's clients and kept by Gomez are in Spanish.

25.     Gomez prepared approximately 1,800 to 4,500 tax returns a year for the 2000-2005 tax years.

26.     It is extremely unlikely that 1284 of Gomez's clients would seek her out on their own accord in a four-month period to file amended tax returns for the 2000-2003 tax years that all claim the same type of tax credit.

27.     The implausibility of 1284 of Gomez's clients seeking her out in a four-month period to prepare and file amended tax returns indicate that the 1284 amended tax returns were part of a fraudulent scheme perpetrated by Gomez.

28.     Gomez's practices in preparing the 1284 amended tax returns also indicate that these returns were part of a fraudulent scheme perpetrated by Gomez.

29.     When Gomez prepared the 1284 amended tax returns she did not require that her clients provide documentation showing that they were enrolled in any post-secondary educational institution, let alone a qualifying post-secondary educational institution, during the tax years for which the education credits were claimed.

30.     When Gomez prepared the 1284 amended tax returns she did not require that her clients provide documentation showing the amount of tuition or fees that were used to generate the education credits nor did she require her clients provide documentation showing that the tuition and fees were qualifying tuition and fees within the definition of the statute.

31.     Thus, for at least 95% of the 1284 amended tax returns Gomez does not have any documentation showing that her clients are eligible for the education tax credits, that the tuition and fees claimed on the amended tax returns were actually spent by the clients, and that tuition

and fees used to generate the education tax credits are "qualifying" within the meaning of the statute.

32.     Additionally, Revenue Agent Joann Leavitt interviewed several of the taxpayers for which Gomez filed amended tax returns.  These interviews also support the conclusion that Gomez fraudulent prepared these amended tax returns.

**B.     The United States' Prior Suit Against Gomez**

33.     Based in large part on the extremely high rejection rate of the 1284 amended tax returns that Gomez prepared and filed in a short four-month time period, the United States filed an action against Gomez in the United States District Court for the Southern District of Florida seeking to permanently enjoin her from preparing or assisting in the preparation of tax returns. That case was captioned:  United States v. Lilia A. Gomez et al., Case No. 06-22962-PAS.

34.     A primary issue in that case was whether Gomez fraudulently prepared the 1284 amended tax returns.  During this case, the United States deposed Gomez.

35.     At her deposition, the United States questioned Gomez about her preparation of the 1284 amended tax returns, the circumstances under which she came to prepare such a large number of returns in a short time, her office practices with respect to preparing tax returns, her record keeping practices and other related matters.

36.     In response to all of the United States' questions, Gomez invoked her right against self-incrimination under the Fifth Amendment to the U.S. Constitution.  She invoked this right because she was worried that answering the United States' questions about her preparation of the 1284 amended tax returns could incriminate her in various criminal offenses stemming from her preparation of these returns.

37.     That Gomez would invoke her Fifth Amendment right against self-incrimination rather than answering the United States' questions about her preparation of the 1284 amended tax returns supports the conclusion that her preparation of these returns was a fraudulent scheme on her part to defraud the government and reduce the tax liability of her clients.

38.     In the injunction case the United States identified other acts of fraud that Gomez committed in her preparation of tax returns and that would also support a permanent injunction.

39.     As an income tax return preparer, Gomez is required to put either her social security number or a unique identifier assigned by the Internal Revenue Service (called a PTIN) on each tax return she prepares.  For the 2005 tax year, Gomez prepared over 2000 tax returns for clients but only put her correct PTIN number on approximately 200 (i.e., about 10%) of the actual returns that were filed with the Internal Revenue Service.  She did not use her social security number or her PTIN number of the approximately 1800 other returns.

40.     As an income tax return preparer, Gomez is required by statute to keep copies of all the tax returns that she prepares or alternatively to keep a client list that contains certain specified information.  Gomez does not keep client lists.  When the Internal Revenue Service requested copies of tax returns for the 2005 tax year, Gomez gave the Internal Revenue Service agent what she represented to be true copies of the tax returns that she filed.  However, her copies differ from the actual filed returns in at least one material respect – they all included Gomez's correct PTIN number.  Thus, not only did Gomez fail to keep copies of the returns as required, she deliberately misled an Internal Revenue Service agent during the course of an investigation by providing false information to the agent.

41.     Gomez has also engaged in a fraudulent tax preparation scheme by preparing tax returns that intentionally disregarded information on questionnaires that her clients completed prior to Gomez preparing their tax returns.  Gomez knowingly ignored or modified that information for the purpose of increasing her clients' refunds or decreasing their liabilities.  Gomez's fraudulent tax preparation scheme also included fabricating information on clients' returns, including filing status, Schedule A deductions and credits.

42.     Gomez has also disregarded the tax laws when it comes to her own personal returns.  She has committed intentional errors on her own tax returns for the purpose of decreasing her own tax liability.  Gomez failed to file some of her own personal and corporate tax returns.  For the 2005 tax year, Gomez did not timely file her individual and corporate tax returns.  She only provided the returns to the Internal Revenue Service in late 2006 after a revenue agent was assigned to investigate her failure to file any tax returns for the 2005 tax year.

43.     These other acts of fraud illustrate that Gomez is willing to ignore the internal revenue code and to commit fraud when it benefits her or her clients.  They also make it more likely that Gomez's preparation of the 1284 amended tax returns was part of another fraudulent scheme that Gomez perpetrated against the United States.

**C.     Gomez's Fraud on the Court**

44.     In addition to Gomez's fraud in the preparation of tax returns, including the 1284 amended tax returns, Gomez committed a significant fraud on the court in the prior litigation.

45.     On December 7, 2006, the United States filed a complaint seeking to permanently enjoin Gomez and her company, 1 Tax Prep., from preparing income tax returns.  That case was

captioned  United States v. Lilia A. Gomez et al., Case No. 06-22962-PAS.  The trial was
originally scheduled for the two week period beginning January 7, 2008.

46.     At the pretrial hearing on December 19, 2007, counsel for Gomez requested a
continuance of the trial date so that the parties could continue their settlement discussions.  The
United States opposed any continuance that would allow Gomez to continue her fraudulent tax
preparation practices for another tax season.  To alleviate the United States' opposition to a
continuance, counsel for Gomez stated that Gomez would voluntarily cease her tax practice
pending resolution of that case by settlement or trial.

47.     In the court's order following the pretrial, the court stated that "[t]he parties
represented that a continuance may be necessary and warranted given that the parties are nearing
settlement, provided that Defendants agree to cease all tax-related work for the 2008 tax season."
(Case No. 06-22962-PAS, Doc. 48.)  Gomez's counsel made this concession orally at the hearing
on December 19, 2007, and Gomez subsequently made this concession in writing to the United
States.  ( Case No. 06-22962-PAS, Doc. 58, Ex. A.)

48.     On December 21, 2007, the parties then jointly moved for a continuance, which
included the representation by defendants that "Defendant has executed, individually and on
behalf of her corporation, an agreement to cease her tax preparation business, effectively
immediately, until resolution of this matter."  (Case No. 06-22962-PAS, Doc. 49, ¶3.)

49.     Despite her representation to the court, Gomez did not cease her tax preparation
practice.  She previously operated her business, 1 Tax Prep., out of a storefront in a Hialeah
shopping mall.  Following her representation to the court, Gomez closed that business and
reopened only 3 or 4 storefronts away in the same shopping mall under a new name –  TFD

Services, Inc.  A sign prominently displayed in the old storefront had an arrow that pointed next door to the new location and said "Nos Mudamos" (English translation: "we moved").

50.     Around this time, and while the prior case was pending, Gomez sold her business to a national tax preparation company.  The move to a different location was part of that sale. Gomez had agreed to stay on at the new location during the transition to manage the location, maintain continuity with her customers and prepare tax returns.  Gomez, however, failed to tell the purchaser that she was the subject of a pending case brought against her by the United States, and she failed to tell the purchaser that she had agreed not to prepare or assist in the preparation of tax returns until the case was resolved.

51.     On March 24, 2008, just a few days after learning that Gomez was violating her representation to the court by continuing to prepare and assist in the preparation of tax returns, the United States moved for a temporary restraining order and sanctions against Gomez.  (Case No. 06-22962-PAS, Doc. 58.)

52.     On March 27, 2008, the court held a hearing on the United States' motion.  At the hearing Gomez consented to a permanent injunction barring her from:

(1) Acting as a federal income tax preparer ....;

(2) Preparing or filing, or directing others to prepare or file, federal income tax returns, payroll tax returns, amended returns, information returns, or any other form or forms filed with the Internal Revenue Service;

(3) Assisting or advising anyone in connection with any tax matter;

(4) Representing individuals or entities before the Internal Revenue Service;

(5) Having an ownership interest in or working for ... any entity that prepares tax returns or represents clients before the Internal Revenue Service;

(6) Engaging in any other activity subject to penalty under Internal Revenue Code §§ 6694, 6695, 6700, 6701, or any other penalty provision of such Code; and

(7) Operating any entity that engages in the business of tax preparation, representation of clients before the Internal Revenue Service, or other tax related services.

53.    Gomez's decision to agree to the permanent injunction was primarily motivated by two factors.  First, it was motivated by her belief that the United States would be able to meet its burden of proof and show that her preparation of the 1284 income tax returns was fraudulent. Second, it was motivated by an agreement with the United States that if Gomez consented to the permanent injunction, then the United would agree that $7,500 in attorneys fees paid to the United States was an appropriate sanction for Gomez's violation of her representation to the court and that the United States would not seek any other sanctions against Gomez for that conduct.

54.    At the hearing and prior to entering the injunction against Gomez, the court heard from counsel for the United States and for Gomez.  Specifically, the court had the counsel for the United States recount the facts the government intended to prove at trial.  For each factual assertion made by the United States, the court had the counsel for Gomez respond by saying whether Gomez agreed with the factual assertion, disagreed with the factual assertion or simply did not dispute the factual assertion.

55.    Following this exchange, the court then entered the permanent injunction against Gomez.  (Case No. 06-22962-PAS, Doc. 64.)  The permanent injunction entered by the court

makes a specific finding that in accordance with the factual assertions made by the United States and the responses by the counsel for Gomez, the court "finds that Plaintiff [United States] has established, by a preponderance of the evidence, entitlement to its request for a permanent injunction over Defendants [Gomez and her corporation]." (Case No. 06-22962-PAS, Doc. 64.) Based on the evidence proffered by the United States and the response by Gomez's attorney, the court made the specific finding that the United States demonstrated a likelihood of success on the merits. (Case No. 06-22962-PAS, Doc. 64, fn. 1.)

56. The brazenness with which Gomez lied to the court about her actions in the prior suit shows she is willing to commit fraud when it benefits her in some way. This makes it more likely that her preparation of the 1284 amended tax returns was also part of a fraudulent scheme designed to benefit her and her clients.

**D.      Assessment of Penalties Pursuant to 26 U.S.C. § 6701**

57. On May 25, 2008, Revenue Agent Joann Leavitt proposed $1,194,000 in penalties against Gomez pursuant to 26 U.S.C. § 6701. This represents a $1000 penalty for each of 1194 separate tax returns. 1186 of the 1194 tax returns were amended tax returns for the 2000-2003 tax years that claimed the education credits, and the other 8 returns were individual income tax returns for the 2003-2004 tax years.

58. 26 U.S.C. § 6701 authorizes a penalty against a person who:

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim or other document,

(2) who knows (or has reason to believe) that such portion will be used in

connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) would result in an understatement of

the liability for tax of another person.

59.     Gomez aided in, assisted in or advised with respect to the preparation of the 1284

amended tax returns.  She also aided in, assisted in or advised with respect to the preparation of

the other individual income tax returns for which the penalties were assessed.

60.     Gomez knew the tax returns and amended tax returns would be filed with the

Internal Revenue Service.  She also knew that the tax returns and amended tax returns would be

used to determine the taxpayers' tax liabilities for the 2000-2004 tax years.

61.     A taxpayer's tax liability is set forth in the various sections of Title 26, U.S.C.,

also called the internal revenue code.  The education credits claimed on the amended tax returns

are set forth in the internal revenue code.

62.     Gomez knew that the vast majority of the clients for which she prepared amended

tax returns were not eligible for the education credits claimed on the returns.  Therefore, Gomez

knew that the amended tax returns would result in an understatement of another person's tax

liability.  Gomez also knew the misstatements she made on the individual income tax returns

would result in understating her clients' tax liabilities.

THEREFORE, the United States requests that this Court enter a judgment against Gomez and in favor of the United States for $1,194,000, plus interest from the assessment date.  The United States further requests that the Court grant it such other relief as justice might require.


Respectfully submitted,

Jeffrey H. Sloman
Acting United States Attorney

/s/ Brian R. Harris
BRIAN R. HARRIS
FL Bar No. 512001
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-6483
brian.r.harris@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing ANSWER AND COUNTERCLAIM was filed with

the EM/ECF system on November 9, 2009, which will automatically serve a copy to:


Robert Ingham
Ingham & Associates, P.A.
714 NE 3rd Avenue
Fort Lauderdale, FL 33304


/s/ Brian R. Harris
Trial Attorney, Tax Division
U.S. Department of Justice